**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

NICHOLIS PALMIER, on Behalf of Himself and All Others Similarly Situated,

  Plaintiff,

vs.

WALMART, INC.,

  Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff, Nicholis Palmier ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Walmart, Inc. ("Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

1

2. This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of Florida and purposefully availed itself, and continues to avail itself, of the jurisdiction of Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district. The plaintiff made his purchase of Great Value Organic Chia Seeds ("Product"), Florida, from a local retailer in this district, and his purchase of Defendant's Product was delivered to and used in this district.

## THE PARTIES

4. Plaintiff Nicholis Palmier is a natural person and a citizen of Monroe County, Florida, residing in Marathon. Plaintiff purchased his Great Value Organic Chia Seeds at the Walmart Supercenter in Homestead, FL. Plaintiff purchased directly from the retail store, not online. Plaintiff is not a member of Walmart Plus or Sam's Club. Before his purchase, Plaintiff saw and reviewed Defendant's advertising claims on the packaging and labeling, and he made his purchase of the Product in reliance thereon. Plaintiff specifically relied upon representations made by

Defendant. Plaintiff did not receive the promised benefits or the total value of his purchase. Plaintiff would purchase the Product again if he were assured the Product was not adulterated.

5. Defendant Walmart Inc. is a publicly traded company and a citizen of Arkansas and Delaware.

6. Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters throughout the nation, with almost four hundred in Florida alone, selling everything from furniture to electronics to groceries.

7. While Walmart sells leading national brands of products, it also sells a large number of products under one of its private label brands, Great Value.

8. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

9. Previously referred to as "generic" or "store brand," private label products have increased in quality and often are superior to their national brand counterparts.

10. Products under the Great Value brand have an industry-wide reputation for quality, and the Organic designation adds credibility to the consumer's positive perception of the Product.

11. In releasing products under the Great Value brand, Defendant's foremost criterion was to have high-quality products that were equal to or better than the national brands.

12. Walmart is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

13. Private-label products under the Great Value brand benefit from their association with consumers' appreciation for the Walmart brand as a whole.

14. That Great Value branded products met this high bar was proven by focus groups, which rated them above their name-brand equivalent.

15. A survey by The Nielsen Co found nearly three out of four American consumers believe store brands [like Great Value] are good alternatives to national brands, and more than 60 percent consider them to be just as good.

16. Private-label products generate higher profits for retailers like Walmart because national brands spend significantly more on marketing, contributing to their higher prices.

17. The development of private-label items is a growth area for Walmart, as they select only top suppliers to develop and produce Great Value products.

18. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Product, Plaintiff would not have been willing to purchase the Product or pay as much for the Product. Plaintiff purchased and/or paid more for the Product than he would have had he known the truth about the Product. The Product Plaintiff received was worthless because it possibly contained mold and yeast. Alternatively, Plaintiff

paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

19. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including, without limitation, any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## NATURE OF THE ACTION

20. This action seeks to remedy the deceptive and misleading business practices of Walmart Inc. with respect to the manufacturing, marketing, and sale of Defendant's Chia Seed Product throughout the state of Florida and throughout the United States (hereinafter the "Products").

21. Chia seeds are highly nutritious, edible seeds of a flowering plant in the mint family. They are particularly high in fiber, chia oil represents about 31% of the weight of chia seeds (3-4 grams per tablespoon), and this oil has a very high concentration (58%) of ALA (alpha-linolenic acid), a polyunsaturated ("good" fat) omega-3 essential fatty acid. Chia seeds also contain some protein and good amounts of the following essential minerals (amounts shown per tablespoon): phosphorus (103 mg), calcium (75 mg), potassium (49 mg), and magnesium (40

mg), iron (1 mg), zinc (0.5 mg), and the B vitamins niacin (1 mg) and thiamin (0.04 mg) (USDA Food Data Central, 2019).

22. Independent testing by a leading consumer group showed Defendant's Organic Chia Seeds had exceedingly high levels of mold and yeast.

23. ConsumerLab.com ("CL") independently evaluates consumer products that affect health, wellness, and nutrition. CL purchased several leading chia seed products sold in the U.S. and tested them to determine whether they possessed their claimed macronutrients (carbohydrates, fiber, protein, fat, and calories) and were free of pathogenic microbes (E.coli, Staphylococcus aureus, Salmonella, Listeria) as well as yeast and mold, and unacceptable levels of lead, cadmium, arsenic, and mercury.

24. Defendant's Organic Chia Seed product was discovered to have levels of mold that indicate spoilage – and both were tested well before their expiration dates: Great Value (Walmart) Organic Chia Seeds had 8X the allowable level of mold -- 8,000 CFU (colony forming units) per gram compared to the 1,000 CFU/g limit on mold and yeast that is applied by the United States Pharmacopeia on botanical products.

25. Mold was not visibly apparent on the Product, but grew from samples.

26. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Product to reasonable consumers, like Plaintiff, by omitting and

6

failing to disclose on its packaging that the Products are contaminated with mold and yeast.

27. As described in further detail below, the Product contains mold and yeast, which could lead to serious adverse health consequences. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the Products they purchase will not contain, or risk containing, any knowingly harmful substances that may cause serious health conditions.

28. Unfortunately for consumers, like Plaintiff, the Product they purchased was contaminated.

29. Defendant is using a marketing and advertising campaign that omits from the packaging that the Product contains, or may contain, mold and yeast. Knowing of the presence of these contaminants is material to reasonable consumers. The presence of mold and yeast was solely within Defendant's possession, and consumers could obtain such information only by sending the products to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product contaminated with mold and yeast when, in fact, they are.

30. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free of known harmful substances, including mold and yeast.

31. Plaintiff and other Class Members certainly expect that the products they purchase will not contain, or risk containing, any knowingly harmful substances that cause serious illness.

32. Unfortunately for consumers, like Plaintiff, the Product they purchased contained, or was at risk of containing, mold and yeast.

33. This proposed class action is the best remedy for Defendant's failure.

34. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain mold and yeast. This omission leads a reasonable consumer to believe they are purchasing a quality product as advertised.

35. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for use and do not contain any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence of such contaminants within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Product contains, or is at risk of containing, mold and yeast.

36. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product does contain, or risk containing, mold and yeast, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention these contaminants anywhere on the Product's packaging or labeling.

37. Defendant's misrepresentations and omissions of the safety of the Product and what is in the Product were material to Plaintiff and Class Members. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a contaminated Product that is harmful to consumers' health.

38. That is because Defendant's Product contains, or is at risk of, mold and yeast, has no value, or at the very least, Defendant was able to charge significantly more for the Product than they would have had they not omitted the fact that the Product was contaminated.

39. As set forth below, products, such as Defendant's Product, are in no way safe for human use and are entirely worthless.

40. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omissions on the Product's labels.

9

Given that Plaintiff and Class Members paid a premium for the Product, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

41. Accordingly, Defendant's conduct violated and continues to violate the Florida Deceptive and Unfair Trade Practices Act.

42. Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL ALLEGATIONS

43. Defendant manufactures, markets, advertises, and sells products.

44. Consumers have become increasingly concerned about the effects of the ingredients in the products they use. Companies, such as Defendant, have capitalized on consumers' desire for products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

45. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as mold and yeast, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Product contains or is at risk of containing on the Product's packaging or labels.

46. Independent testing evidences Defendant's Organic Chia Seeds are contaminated with mold and yeast.

47. As stated supra, on June 23, 2026, Consumerlab.com, an independent consumer laboratory, tested several chia seed products available. The results for Defendant's Product were disturbing. Defendant's Organic Chia Seed product was found to contain exceedingly high levels of mold, indicating spoilage. Defendant's Great Value (Walmart) Organic Chia Seeds had 8X the allowable level of mold.

48. The Product's packaging does not identify any contaminants. Indeed, mold and yeast are not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of mold and yeast in the Product. This leads reasonable consumers to believe the Product does not contain, and is not at risk of containing, mold and yeast.

49. However, the Product contains or is at risk of containing these contaminants.

50. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing products for many years, including the contaminated Product.

51. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Product and possesses unique and superior knowledge regarding the manufacturing process of the Product, the manufacturing process of the ingredients and raw materials the Product contains, and the risks associated with those processes, such as the risk of mold and yeast

contamination, as well as the ability to test the Product for contamination prior to releasing the Product into the stream of commerce. Such knowledge is solely within the possession of Defendant.

52. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Product. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

53. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Product.

54. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Product containing mold and yeast is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

55. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they use. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Product's labels, and the listed ingredients. Defendant knows that if it had not omitted that the Product contained mold and yeast, then Plaintiff and the Class would not have purchased the Product, or, at the very least, would not have paid nearly as much for the Product.

56. Consumers, including Plaintiff, rely on marketing and information in making purchasing decisions.

57. By omitting that the Product include contaminants on the labels of the Product throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained mold and yeast.

58. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

59. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

60. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without mold and yeast over comparable products not so marketed.

61. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for a Product that was not what Defendant represented;

b. Paid a premium price for a Product that was not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

d. Were denied the benefit of the properties of the Product Defendant promised.

62. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Product.

63. Plaintiff and the Class Members paid for a Product that does not contain mold and yeast. Since the Product does indeed or possibly contain these contaminants, the Product Plaintiff and the Class Members received was worth less than the Product they paid for.

64. Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Product than they would have had they known the truth about the Product. Consequently,

14

Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

65. Plaintiff and Class Members saw the Product's packaging prior to purchasing the Product. Had Plaintiff and Class Members known the truth about the Product, i.e., that they possibly contain mold and yeast, they would not have been willing to purchase them at any price, or, at a minimum, would have paid less for them.

## CLASS ACTION ALLEGATIONS

66. Class Definition: Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

67. **National Class**: All persons in the United States who purchased Defendant's Organic Chia Seed product at issue during the fullest period of law.

68. In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

69. **Florida Sub-Class**: All persons in the State of Florida who purchased the Defendant's Organic Chia Seed product at issue during the fullest period of law.

70. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

71. **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands and that members of the Class are numerous and geographically dispersed throughout Florida and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

72. **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

73. **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant committed the conduct alleged herein;

b. whether Defendant's conduct constitutes the violations of laws alleged herein;

c. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether Walmart's Product is adulterated and/or misbranded under the Florida Health & Safety Code or federal law;

e. whether Defendant knew or should have known that the representations were false or misleading;

f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on Defendant's chia seed product;

g. whether Defendant's representations, concealments, and non-disclosures concerning Defendant's Product are likely to deceive the consumer;

h. whether Defendant's representations, concealments, and non-disclosures concerning the Defendant's Product violates FDUTPA and/or the common law; and

j. whether Plaintiff and the Class are entitled to a full refund, restitution, or other damages.

74. **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits make it impossible

and impracticable for members of the proposed Class to prosecute their claims individually and multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

- given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

- when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

- this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

- without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

75. **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I
### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq.

76. Plaintiff incorporated by reference preceding paragraphs 1-66.

77. Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

78. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable

acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

79. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Product was suitable for use.

80. Plaintiff and Class members relied upon these advertisements in deciding to purchase Defendant's Product.  Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

81. Had Plaintiff known that Defendant's Product was not as advertised, he would not have purchased the product. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

82. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

83. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

84. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product is adulterated.

## COUNT II
### Breaches of Express Warranty,

**Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.**

85. Plaintiff incorporated by reference preceding paragraphs 1-66.

86. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be of uniform quality, color, and taste and capable of functioning reliably.

87. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

88. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

89. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be of uniform quality, color, and taste and capable of functioning reliably.

90. Defendant's representations affirmed and promised that the Product would be of uniform quality, color, and taste and capable of functioning reliably.

91. Defendant described the Product so Plaintiff believed it would be of uniform quality, color, and taste and capable of functioning reliably, which became part of the basis of the bargain that it would conform to its affirmations and promises.

21

92. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions, and marketing of the Product.

93. This duty is based on Defendant's outsized role in the market for this type of product, a leading seller of Defendant's Product.

94. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

95. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

96. Defendant received notice and should have been aware of these issues due to complaints by consumers and third parties, including regulators and competitors, to its main offices and through online forums.

97. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

98. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be of uniform quality, color, and taste and capable of functioning reliably.

99. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because he expected that it would be of uniform quality, color, and taste and capable of functioning reliably, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT III
### Negligent Misrepresentation

100. Plaintiff incorporates by reference preceding paragraphs 1-66.

101. Defendant had a duty to truthfully represent the Product, which it breached.

102. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, and as an industry leader.

103. The representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

104. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

105. The representations took advantage of consumers' cognitive shortcuts at the point of sale and of their trust in Defendant.

23

106. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce him purchase of the Product.

## COUNT IV
### Unjust Enrichment

107. Plaintiff incorporates by reference preceding paragraphs 1-66.

108. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

109. Plaintiff and Class members conferred a benefit on Defendant by purchasing the adulterated Products.

110. Defendant received the monies paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

111. Defendant accepted and retained the benefit in the amount of the profits they earned from Defendant's Product sales paid by Plaintiff and Class members.

112. Defendant has profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

113. Plaintiff does not have an adequate remedy at law against Defendant.

114. Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendant derived from their deceptively advertised Product sales.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class(es);

C. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding a full refund, restitution, and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin them from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and appropriately recall the Products;

G. Ordering a jury trial and damages according to proof;

H. Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K. Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  June 26, 2026

s/*William Wright*
The Wright Law Office, P.A.
William Wright
willwright@wrightlawoffice.com
Florida Bar No. 138861
Nisha Wright
nisha@wrightlawoffice.com
Florida Bar No. 11012
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904